# IN THE COURT OF APPEALS OF IOWA

No. 15-0166
Filed December 23, 2015

**AMY WUSK,**
        Plaintiff-Appellant,

**vs.**

**EVANGELICAL RETIREMENT HOMES,
INC., d/b/a VALLEY VIEW VILLAGE
and VALLEY VIEW VILLAGE ASSISTED
LIVING, INC.,**
        Defendants-Appellees.

_____

        Appeal from the Iowa District Court for Polk County, Dennis J. Stovall,

Judge.


        A plaintiff appeals from a district court ruling granting summary judgment

in favor of the defendants on her wrongful-discharge claim.  **AFFIRMED.**


        Mark W. Thomas of Grefe & Sidney, P.L.C., for appellant.

        Mitchell R. Kunert and Katie L. Graham of Nyemaster Goode, P.C., Des

Moines, for appellees.


        Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Amy Wusk appeals from a district court ruling granting summary judgment in favor of Evangelical Retirement Homes, Inc., d/b/a Valley View Village (Valley View).[1] She asserts she was wrongfully terminated from her employment with Valley View in retaliation for pursuing a workers' compensation claim. We affirm.

## I.        Background Facts and Proceedings

Wusk began working for Valley View, an assisted living facility, as a part-time on-call Certified Nursing Assistant (CNA) in February 2011. In her position, Wusk did not have regularly-scheduled shifts but was instead required to schedule her own hours pursuant to the terms of the On-Call Nursing Pool Agreement.[2] Wusk scheduled shifts with Beatrix Baker, Valley View's Quality

---

[1] Valley View Village and Valley View Village Assisted Living, Inc. are separate and distinct entities. Wusk admitted she was never employed by Valley View Village Assisted Living, Inc. As a result, the district court dismissed Valley View Village Assisted Living, Inc. from this suit. *See Travillion v. Heartland Pork Enters., Inc.*, 2003 WL 21464807, at *3 (Iowa Ct. App. June 25, 2003) (affirming the dismissal of a plaintiff's claim against his former supervisor because "Iowa Code chapter 85 applies only to employers"). Wusk does not appeal the district court's dismissal of Valley View Village Assisted Living, Inc.

[2] Wusk executed two Pool Agreements with Valley View, one in February 2011 and one in April 2012. Both agreements contained the following language:
> 5. Pool employees MUST BE AVAILABLE, RESPOND TO CALL and WORK a minimum of:
> - One holiday per calendar year
> - One twelve (12) hour shift per month
>
> Pool employees are responsible for coordinating their shift availability with the staffing coordinator. If you cancel a shift that was to meet the above requirements, you must make up that shift within two weeks. If the missed shift was for a holiday, you must work the next holiday. Employees will be excused from the above hours requirement if there are no hours available.
> . . . .
> 8. Failure to follow the terms of this agreement will be considered a voluntary quit.

Assurance Manager and Scheduling Coordinator. Generally, on-call CNAs were required to sign up for hours in person or by calling Baker. On occasion, Baker would contact employees if Valley View still had available hours or if it was short-staffed and needed additional help that day. If an on-call CNA failed to meet the requirements of the Pool Agreement, it resulted in a voluntary quit on behalf of the employee.

On November 16, 2011, Wusk injured her arm while helping another employee dress a patient. She claims she informed the nurses on duty that she had injured her arm but was not provided an accident report form to complete. The following day, Wusk visited the doctor. She also reported her injury to Brad Cole, Valley View's Executive Director.[3] Wusk reported to Valley View for her last scheduled shifts on November 18 and 19, 2011.

In December 2011, Wusk began treatment for her arm injury and was placed on lifting restrictions until November 5, 2012. Wusk stated she remained in contact with her supervisor, Karen Pewick, Valley View's Director of Nursing, throughout this time providing paperwork relating to her restrictions and notifying Pewick when her restrictions were modified. She claims she notified Pewick when her lifting restriction increased to fifteen pounds and requested light-duty work, but Valley View never offered her light-duty work.

---

9. This agreement shall control to the extent it conflicts with the Valley View Village personnel policy handbook.

[3] Valley View's Employee Handbook required an employee to notify her supervisor within twenty-four hours if she experienced a work-related injury. Wusk did not report her injury within this timeframe, but Cole submitted her report anyway.

On June 27, 2012, Wusk filed a workers' compensation claim relating to the November 16 injury to her arm.

On November 5, 2012, Wusk was released from all of her restrictions and cleared to return to regular work. That same day Wusk notified Pewick of her release and stated she was available for work. Wusk also left a message for Baker conveying the same and inquiring about available hours. Baker returned Wusk's call within a day and left a message for Wusk. Wusk did not return Baker's call or speak with anyone else from Valley View following these contacts until after she was terminated in August 2013.

On July 9, 2013, Wusk settled her workers' compensation claim with Valley View.

In August 2013, Shelly Barryhill, the Business Manager for Valley View, conducted an audit of the on-call nursing staff. During the audit she discovered Wusk had not scheduled any hours since November 2011 despite having been released to return to work in November 2012. Barryhill and Pewick decided to terminate Wusk from Valley View's employment for failing to follow the terms of the Pool Agreement. Cole subsequently approved this decision.[4] On August 28, 2013, Valley View terminated Wusk's employment. Wusk stated she visited Valley View multiple times following her termination and attempted to contact Barryhill to find out why her employment had been terminated, but Barryhill refused to provide her any information or documentation saying what type of

---

[4] Valley View submitted affidavits from Barryhill, Pewick, and Cole at summary judgment stating none of them were aware of Wusk's settlement at the time the decision to terminate her employment was made.

employee Wusk was—which Wusk had hoped would assist her in finding new employment.

On January 2, 2014, Wusk filed this action, alleging common-law retaliatory discharge. On October 28, 2014, Valley View moved for summary judgment prior to the close of discovery. On December 9, 2014, the court held a hearing on Valley View's motion. On January 15, 2015, the district court granted Valley View's motion for summary judgment. The court held Wusk had failed to establish a causal connection between the filing of her workers' compensation claim and later termination. The court found Wusk's claim that Valley View employees had a negative demeanor toward her unconvincing and her assertions that it was "common knowledge" at Valley View that employees would be fired if they submitted a workers' compensation claim were inadmissible and vague. It further found that even if Wusk could rely on the settlement of her workers' compensation claim in July 2013 as the basis for retaliatory motive, temporal proximity alone was not enough to establish causation. The court also noted Valley View had a legitimate overriding business justification for terminating Wusk's employment: "her failure to coordinate work shifts from November 2012 to August 2013." The court concluded: "No reasonable fact finder could conclude [Wusk] was terminated based on filing or settling her workers' compensation claim, rather than failing to schedule work shifts for nine months." Wusk appeals.

II.     Standard of Review

We review a trial court's grant of summary judgment for corrections of errors at law. Iowa R. App. P. 6.4. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014). The burden is on the moving party and we view the record in the light most favorable to the nonmoving party. *Goodpaster*, 849 N.W.2d at 6. "However, the nonmoving party may not rest upon the mere allegations of his pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005) (citing Iowa R. Civ. P. 1.981(5)).

## III. Analysis

Iowa law adheres to the common-law employment-at-will doctrine, which provides "the employment relationship is terminable by either party 'at any time, for any reason, or no reason at all.'" *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280 (Iowa 2000) (quoting *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997)). However, Iowa recognizes a public-policy exception for employees alleging they were wrongfully discharged for filing a workers' compensation claim. *See Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988) (citing Iowa Code § 85.18 (1987) ("No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided.")).

In order to establish a prima facie case of retaliatory discharge, Wusk "must establish (1) engagement in a protected activity, (2) adverse employment

action, and (3) a causal connection between the two." *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 894 (Iowa 2015) (quoting *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998)). For purposes of summary judgment, both parties agreed Wusk could establish the first two elements of her claim. Thus, the issue before us is whether the district court erred in determining as a matter of law that no causal connection existed between Wusk's filing a workers' compensation claim in June 2012 or her settlement of the claim in July 2013 and her termination from employment with Valley View in August 2013.

The causation standard in a retaliatory-discharge case is high. *Teachout*, 584 N.W.2d at 301. In order to prevail on her claim, Wusk must demonstrate her filing of the workers' compensation claim "was the determining factor in the adverse employment action."[5] *Rivera*, 865 N.W.2d at 898; *see Phipps*, 558 N.W.2d at 203. A "determining factor" is one that "tips the scales decisively one way or the other." *Teachout*, 584 N.W.2d at 302 (quoting *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990)).

Wusk argues she established a genuine issue of material fact to be considered by a jury by presenting substantial evidence that (1) Valley View failed to provide her with hours, (2) Valley View administrators displayed a negative attitude toward her following her injury in November 2011, and (3) Valley View had a reputation for terminating employees injured on the job. She

---

[5] Our supreme court recently clarified that a plaintiff in a retaliatory-discharge case is not required to prove the lack of an overriding business justification. *Rivera*, 865 N.W.2d at 898. The employee must prove that the protected conduct was the determining factor, and "evidence related to an employer's legitimate business reasons" is relevant. *Id.* at 898–99. Indeed, "Iowa law does not impose liability on an employer when the determining factor was a legitimate business reason." *Id.* at 898.

asserts the district court assumed the functions of a jury by focusing solely on the terms of the Pool Agreement instead of viewing the evidence in the light most favorable to her, and improperly weighing evidence and evaluating the credibility of witnesses.[6]

Wusk contends the district court ignored evidence that Valley View failed to provide her work, including light-duty work following the modification of her lifting restrictions. She asserts she fulfilled the requirements of the Pool Agreement, but Valley View ignored her request to return to work for months and waited over a year from the filing of her workers' compensation claim to fire her so that it could avoid a claim of retaliatory discharge.

Pursuant to the terms of the Pool Agreement, Wusk was required to contact Baker to schedule her hours. On November 5, 2012, the day Wusk was released to return to regular work, she contacted both Pewick, her immediate supervisor, and Baker, the scheduling coordinator, asking to be put on the schedule. Within a day, Baker returned Wusk's call and left a message. Although Wusk testified she attempted to call Baker again, her testimony was not specific either as to how many times or when she tried calling Baker. Giving every benefit of doubt to Wusk, if she did make any attempts to call Baker, they were close in time to the initial November contact. Wusk's testimony raises no

---

[6] Wusk argues questions of causation and motive are factual in nature and must be resolved by a jury. *See Fitzgerald*, 613 N.W.2d at 282. However, she fails to acknowledge that retaliatory-discharge cases should be decided at summary judgment when a plaintiff has failed to establish a question of material fact for the jury regarding causation. *See, e.g., Teachout*, 584 N.W.2d at 303 (finding summary judgment appropriate when the plaintiff "failed to produce sufficient evidence of a causal connection between her firing and her intent to report child abuse").

likelihood that during at least six months preceding her termination she made any attempt to contact Baker or anyone else at Valley View regarding scheduling hours to work.

Nine months after she was released to work without restrictions, Valley View discovered Wusk had failed to follow the terms of the Pool Agreement, resulting in a voluntary quit. Pewick and Barryhill both testified it was Wusk's failure to fulfill her obligations under the Pool Agreement that led to their decision to terminate Wusk in August 2013. Cole stated that it was upon this basis that he approved the termination decision. We agree with the district court in finding Wusk's "own failure to fulfill her obligation of coordinating shifts with the staffing coordinator does not evince a retaliatory motive on the part of the employer." Thus, Wusk did not generate a genuine issue of material fact on this issue.

Wusk further contends the district court erred in determining that evidence of the negative treatment she received from Valley View administrators after her injury in November 2011 and the filing of the workers' compensation claim in June 2012 was vague. She claims Cole, the executive director, seemed "distant,"[7] the work "atmosphere was different," no one at Valley View seemed very helpful, and Barryhill seemed to avoid Wusk after she was terminated. This court has held that mere generalities of a negative change in the way an employee was treated after filing a workers' compensation claim are insufficient to prove that the filing of the claim was a determining factor in a subsequent

---

[7] Despite Wusk's claim that Cole seemed to not want to help her, the record shows Cole submitted her injury report even though Wusk reported the injury outside of the twenty-four hour reporting deadline provided for in the employee handbook.

adverse employment action. *See McMahon v. Mid-Am. Constr. Co. of Iowa*, No. 99-1741, 2000 WL 1587952, at *4 (Iowa Ct. App. Oct. 25, 2000). We agree with the district court that there is no genuine issue of material fact concerning the effect of how the perceived negative treatment Wusk experienced after her injury evinces a retaliatory motive.

Next, Wusk argues the district court erred in dismissing evidence of "common knowledge" among Valley View employees that the filing of a workers' compensation claim would result in termination because it was inadmissible hearsay. Wusk did not support her allegations by submitting affidavits from witnesses or otherwise presenting evidence outside of her own testimony of what other employees told her. Such evidence is hearsay and cannot be considered at summary judgment. *See Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96 (Iowa 2012) ("[T]he court should only consider 'such facts as would be admissible in evidence' when considering the affidavits [or testimony] supporting and opposing summary judgment." (quoting Iowa R. Civ. P. 1.981(5))). Wusk contends this evidence is not hearsay because discovery was not yet closed at the time of the summary judgment hearing, and therefore, she can still call witnesses to testify at trial about the negative treatment of workers' compensation claimants.[8] Our rules clearly state the nonmoving party "may not

---

[8] Wusk testified in her deposition that a coworker named Sharron had observed other Valley View employees not receiving financial assistance for work-related injuries, and was afraid to report a back injury for fear of losing her job. Wusk discussed another coworker named Carlos who was injured at work and not compensated by Valley View, however, Wusk did not know whether Carlos still worked for Valley View. She also discussed an unnamed woman who had hurt her knee at work and was later fired, but

rest upon the mere allegations or denials in the pleadings," Iowa R. Civ. P. 1.981(5), but "must set forth specific facts showing the existence of a genuine issue for trial," *Hlubek*, 701 N.W.2d at 95; *see also Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) ("Summary judgment is not a dress rehearsal or practice run, it is the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events."). Wusk failed to set forth specific facts to support her allegations that Valley View had a reputation for firing employees who submitted workers' compensation claims. Without such facts, she has not demonstrated a genuine issue of material fact.

Additionally, Wusk claims the district court erred in rejecting her claim that the temporal proximity between settlement of her workers' compensation claim on July 9, 2013, and her termination from employment on August 28, 2013, evinces a retaliatory motive.[9] She further complains the affidavits of Barryhill, Cole, and Pewick stating they were unaware Wusk's claim had been settled in July 2013 are "self-serving and suspect," and that it is unlikely these three were unaware of her settlement due to their positions at Valley View. She argues the district court erred in determining these witnesses were credible because credibility is not within the court's scope of review on summary judgment.

---

did not allege the subsequent firing was related to the employee's engagement in any protected activity.

[9] Wusk did not plead that the settlement of her workers' compensation claim in July 2013 is the protected activity she engaged in, but rather her filing of the claim in June 2012. However, we acknowledge the district court ruled on this issue in its order and reach the issue.

The fact that termination occurs after an employee has engaged in a protected activity is alone insufficient to establish a causal connection. *Teachout*, 584 N.W.2d at 302; *Phipps*, 558 N.W.2d at 203 (holding that evidence of an employee's engagement in a protected activity followed by his termination one month later, by itself, is "insufficient to generate a jury question on retaliation"). Wusk failed to present evidence to contradict Valley View's affidavits from Barryhill, Cole, or Pewick that they were unaware her workers' compensation claim had been settled. Further, the district court did not err in considering these affidavits. *See* Iowa R. Civ. P. 1.981 (providing for the use of affidavits in support of summary judgment motions). Therefore, Wusk has not presented sufficient evidence to support a conclusion that a genuine issue of material fact exists that could support her allegation that settlement of her workers' compensation claim was the determining factor that led to her termination.

## IV. Conclusion

Upon our review of the record before us, we conclude no genuine issue of material fact exists in support of Wusk's allegations that either the filing of her workers' compensation claim in June 2012 or the settlement of her claim in July 2013 was the determinative factor in Valley View's August 2013 decision to terminate her employment. Therefore, we agree with the district court that Wusk's retaliatory-discharge claim fails as a matter of law.

**AFFIRMED.**